## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 19-CR-30056-NJR** |
| **GUSTAVO ALVAREZ-GOMEZ,** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion to Suppress Statements filed by Defendant Gustavo Alvarez-Gomez (Doc. 39). For the following reasons, the motion is denied.

### BACKGROUND

On February 25, 2019, police in Fairview Heights, Illinois, arrested Alvarez-Gomez for suspicion of aggravated unlawful use of a weapon and reckless discharge of a firearm (*Id.*). Once in custody, police attempted to question Alvarez-Gomez through the use of an interpreter, but he requested his attorney, and all questioning ceased (*Id.*).

Alvarez-Gomez was charged in the Circuit Court for St. Clair County, Illinois, with misdemeanor unlawful use of a weapon and felony reckless discharge of a firearm (*Id.*). Bond was posted on February 28, 2019, and Alvarez-Gomez was released from state custody pending his next court date (Doc. 43, Ex. 1). On March 1, 2019, he was arraigned on the charges with the assistance of appointed-counsel (Doc. 39).

On April 11, 2019, agents for Homeland Security Investigations brought Alvarez-

Gomez in for questioning, and he allegedly confessed to holding and firing the gun (*Id.*). On April 16, 2019, Alvarez-Gomez was charged in this federal district court by way of indictment with one count of alien in possession of a firearm, in violation of 18 U.S.C. § 922(g)(5) (Doc. 1).

On June 13, 2019, Alvarez-Gomez filed a motion to suppress the statements he made to the Homeland Security Investigations agents (Doc. 39). He argues the statements were taken in violation of his constitutional rights, because he was questioned about the incident on February 25, 2019, without his counsel present, and the agents did not scrupulously honor his right to remain silent (*Id.*).

## DISCUSSION

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend V. "[T]his prohibition not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984) (quotations omitted). In *Miranda v. Arizona*, the Supreme Court placed procedural safeguards on the Fifth Amendment by holding that a person subject to custodial interrogation must be apprised of the following: the right to remain silent; that anything said can be used against him or her in a court of law; the right to an attorney; and that if he or she cannot afford an attorney, one will be appointed prior to questioning. 384 U.S. 436, 445 (1966).

Once an accused invokes the right to remain silent, it must be "scrupulously honored." *Id.* at 479. However, "*Miranda* cannot be read to create a per se proscription against any further questioning by any police officer, on any topic, once the suspect has expressed a

wish to remain silent." *United States v. Schwensow*, 151 F.3d 650, 658 (7th Cir. 1998) (quoting

*Michigan v. Mosley*, 423 U.S. 96, 104 (1975)). To determine whether a suspect's rights were

"scrupulously honored," the Supreme Court has established a multi-factor inquiry that

considers the amount of time that lapsed between interrogations; the scope of the second

interrogation; whether new *Miranda* warnings were given; and the degree to which police

officers pursued further interrogation once the suspect had invoked his right to remain silent.

*Mosley*, 423 U.S. 96 at 104-05. Similarly, once a suspect invokes his right to counsel, police

may not question the suspect again unless counsel is present. *Howes v. Fields*, 565 U.S. 499,

510 (2012) (citing *Maryland v. Shatzer*, 559 U.S. 98 (2010)). However, "this rule does not apply

when there is a sufficient break in custody between the suspect's invocation of the right to

counsel and the initiation of subsequent questioning." *Id.*

An individual may waive his or her *Miranda* rights so long as the waiver is made

voluntarily, knowingly, and intelligently. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). The

Supreme Court has set forth a two-pronged test for determining whether a waiver is valid:

> First, the relinquishment of the right must have been voluntary in the sense
> that it was the product of a free and deliberate choice rather than intimidation,
> coercion, or deception. Second, the waiver must have been made with a full
> awareness of both the nature of the right being abandoned and the
> consequences of the decision to abandon it. Only if the totality of the
> circumstances surrounding the interrogation reveal both an uncoerced choice
> and the requisite level of comprehension may a court properly conclude that
> the *Miranda* rights have been waived.

*Id*. The government bears the burden of establishing a valid waiver of *Miranda* rights, *Colorado*

*v. Connelly*, 479 U.S. 157, 168 (1986), and "courts must indulge every reasonable presumption

against the loss of constitutional rights" *Illinois v. Allen*, 397 U.S. 337, 343 (1970).

Here, Alvarez-Gomez argues the Homeland Security agents did not scrupulously

honor his right to remain silent or his right to counsel. Alvarez-Gomez was initially interviewed by Fairview Heights Police on February 25, 2019, but all questioning stopped after he exercised his right to an attorney. On April 11, 2019, after a 45-day break in custody, agents for Homeland Security Investigations brought him in for questioning. The Supreme Court has held that a 14-day break in custody is an adequate period for purposes of reinitiating questioning after a suspect has invoked his *Miranda* rights; 14 days "provides plenty of time for the suspect to get reacclimated to his normal life, to consult with friends and counsel, and to shake off any residual coercive effects of his prior custody." *Shatzer*, 559 U.S. at 110. Although the second interrogation covered some of the same issues as the first, "the constitutionality of a subsequent police interview depends not on its subject matter but rather on whether the police, in conducting the interview, sought to undermine the suspect's resolve to remain silent." *Schwensow*, 151 F.3d at 659.

The Court has reviewed Alvarez-Gomez's videotaped interrogation in its entirety, which was conducted through the aid of an interpreter. Nothing about the interrogation suggests the Homeland Security agents sought to wear down Alvarez-Gomez's resolve to exercise his rights. Before questioning commenced, the interrogators identified themselves as agents of Homeland Security Investigations and informed Alvarez-Gomez they wanted to take his sworn statements regarding his identity, date and place of birth, previous deportations, place and manner of entry into the United States, his immigration documents, and "another matter." The agents then *Mirandized* Alvarez-Gomez:

> **Agent:** You have the right to remain silent. Anything you say can be used against you in a court of law or other proceedings. You have the right to consult an attorney before making any statement or answering any questions. You have the right to have an attorney present with you during questioning. If you cannot afford an attorney, one will be

appointed for you before any questioning, if you wish. If you decide to answer questions now, you still have the right to stop the questioning at any time, or stop the questioning for the purpose of consulting an attorney. Do you understand your rights?

**Alvarez-Gomez**: Yes

**Agent:** Are you willing to waive these rights and talk to me without an attorney present?

**Alvarez-Gomez:** That's OK.

Throughout the interview, Alvarez-Gomez reiterated that he could not read or write well. But despite his illiteracy, there is no indication Alvarez-Gomez lacked the capacity to understand his rights or intelligently exercise them. He was lucid and gave logical answers, and affirmatively responded when asked whether he understood his rights and was willing to waive them. Also, Alvarez-Gomez exercised his right to counsel during the initial questioning by Fairview Heights Police. Thus, there is no reason to believe he did not understand his rights or the consequences of waiving them. *See Shatzer*, 559 U.S. at 107 (explaining there is "little reason" to believe that a subsequent interrogation without counsel is coerced following a sufficient break in custody because the suspect "knows from his earlier experience that he need only demand counsel to bring the interrogation to a halt"). And although Alvarez-Gomez cannot speak English, the agents utilized an interpreter throughout the entire interrogation, and Alvarez-Gomez does not contest the accuracy of the translation. Thus, his limited grasp of the English language does not diminish the validity of his waiver. *See United States v. Moreno*, No. 06-CR-335, 2007 WL 3051602 (E.D. Wis. Oct. 17, 2017) (suspect who had difficulty understanding English was adequately warned of his *Miranda* rights via a special agent who was fluent in Spanish).

Alvarez-Gomez also argues he invoked his right to remain silent during the

Homeland Security interrogation, which should have precluded any further questioning. A suspect must unambiguously invoke the right to remain silent. *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010). "An ambiguous or equivocal reference that causes a reasonable officer to understand only that the suspect *might* be invoking the right to remain silent is not enough to require the cessation of questioning." *United States v. Stewart*, 902 F.3d 664, 678 (7th Cir. 2018) (internal quotations omitted). Here, Alvarez-Gomez told the Homeland Security agents, "Well you know I'm part of a case and I'm about to get out of that right now, so if you're accusing me of something else, I don't know. I don't know what it's about, I really don't know why you want to get me. I don't know what this is about."

This statement if far from unequivocal and does not meet the level of articulation necessary to assert the right to remain silent. *See United States v. Sherrod*, 445 F.3d 980 (7th Cir. 2006) (suspect's comment that he was "not going to talk about nothin'" was not an invocation of the right to remain silent).

In sum, the subsequent questioning by the Homeland Security agents did not undermine Alvarez-Gomez's Fifth Amendment rights. The interrogation occurred after a sufficient break in custody; the Homeland Security agents re-*Mirandized* Alvarez-Gomez and fully apprised him of his rights; his waiver of those rights was made knowingly, voluntarily, and intelligently; and he never re-asserted his right to remain silent or right to counsel.

Finally, it appears Alvarez-Gomez raises an argument under the Sixth Amendment, which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . .to have the Assistance of Counsel for his defense." U.S. Const. amend VI. The Sixth Amendment right to counsel is "offense specific." *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991). "It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is

commenced, that is, at or after the initiation of adversary judicial criminal proceedings . . ." *Id.* However, "[w]hen the Sixth Amendment right to counsel attaches, it does encompass offenses that, even if not formally charged, would be considered the same offense under the *Blockburger* test. *Texas v. Cobb*, 532 U.S. 162, 168 (2001). In *Blockburger*, the Court explained, "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offense or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932).

In this instance, Alvarez-Gomez was charged with reckless discharge of a firearm, in violation of 720 ILCS 5/24-1.5, and unlawful use of a weapon, in violation of 720 ILCS 5/24-1. He was represented by counsel on these charges at the time of Homeland Security's interrogation. Thus, the Sixth Amendment is implicated only if the elements required to prove alien in a possession of a firearm do not differ from those required to prove reckless discharge of a firearm and unlawful use of a weapon. "A person commits reckless discharge of a firearm by discharging a firearm in a reckless manner which endangers the bodily safety of an individual." 720 ILCS 5/24-1.5. "A person commits the offense of unlawful use of a weapon when he knowingly . . . [c]arries or possesses in any vehicle or concealed on or about his person except when on his land or in his own abode . . . or fixed place of business. . . . any . . . firearm" 720 ILCS 5/24-1. Finally, alien in possession of a firearm requires proof that the defendant, while being an alien who is unlawfully in the United States, knowingly possessed a firearm; and that possession was in or affecting commerce; or knowingly received any firearm that had been shipped or transported in interstate or foreign commerce. 18 U.S.C. § 922(g)(5). Because alien in possession of a firearm requires different elements than the state

charges, the Homeland Security Investigations agents did not violate Alvarez-Gomez's Sixth Amendment rights by interrogating him without his counsel's presence.

For these reasons, the Motion to Suppress Statements filed by Gustavo Alvarez-Gomez (Doc. 39) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:  August 20, 2019**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**